IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**WARD FRANKLIN DEAN,**

    **Defendant-Appellant**

v.                                    **CASE NO. 3:07cr122/MCR**

**UNITED STATES OF AMERICA**

    **Plaintiff-Appellee**
_____/

**O R D E R**

Ward Franklin Dean appeals the magistrate judge's denial of his motion for judgment of acquittal on the misdemeanor offense of disclosing the contents of records used in the jury selection process of the Northern District of Florida, in violation of the Jury Selection and Service Act ("JSSA"). 28 U.S.C. § 1867(f).[1] For the reasons stated below, after examining the record and briefs in this case, the court AFFIRMS the magistrate judge's decision.

**Background**

This misdemeanor matter stems from events connected with Dean's 2005 felony prosecution for Internal Revenue Code violations. *See United States v. Dean*, 487 F.3d 840 (11th Cir. 2007) ("*Dean I*"), *cert. denied*, 128 S.Ct. 1444, 170 L.Ed.2d 275 (2008). With

---

[1] The statute provides that "[a]ny person who discloses the contents of any record or paper in violation of this subsection may be fined not more than $1,000 or imprisoned not more than one year, or both." 28 U.S.C. § 1867(f). The magistrate judge found Dean violated § 1867(f) "directly or through third parties." *United States v. Dean*, 506 F.Supp.2d 1097, 1102 (N.D. Fla. 2007) ("*Dean II*"). The indictment did not include a charge of aiding and abetting under 18 U.S.C. § 2, but an aiding and abetting charge is implied in all federal indictments and need not be specifically mentioned. A party may be charged as a principal and found guilty on the basis of aiding and abetting as long as the evidence supports that conclusion. *See U.S. v. Walser*, 3 F.3d 380, 388 (11th Cir. 1993).

respect to the felony prosecution, the record reflects that in 1996 Dean, a physician and retired naval surgeon, reported his income and tax liability as "0" despite documented income that year of at least $136,000. Dean continued to file tax returns in 1997-2001 showing no income or tax liability, and in 2002 he failed to file a return at all. On March 17, 2005, Dean was indicted on six counts of tax evasion and one count of attempting to obstruct the administration of the internal revenue laws. Trial was set to commence December 5, 2005. On November 25, 2005, Dean filed a motion to obtain and inspect grand and petit jury selection records pursuant to § 1867(a) and (f) of the JSSA. The district court granted his motion on December 1 and directed Dean to contact Beatrice Spencer, the jury administrator for the Northern District of Florida, to arrange inspection of the documents in Tallahassee, Florida. The next day two of Dean's associates, Sharon Bronco and B. C. Williams, arrived in Tallahassee with Dean's power of attorney authorizing them to "copy and inspect all records concerning the selection of grand and petit jurors in my case." *Dean II*, 506 F.Supp.2d at 1100. Because Dean's associates were unsure which specific records Dean wanted, Ms. Spencer spoke with Dean by phone. Following her telephone conversation with Dean, Ms. Spencer gave Ms. Bronco and Mr. Williams petit jury information forms, letters from potential jurors requesting an excuse from jury summonses, and undeliverable summonses.[2] Dean reviewed the jury information forms and filed a motion to stay the proceedings pursuant to § 1867(a) on the morning of trial, arguing he had not been allowed to inspect the grand jury lists and that the petit jury lists raised questions about some of the potential jurors' qualifications.[3] The court delayed the start of trial without ruling on the motion to stay in order to give Dean's counsel an opportunity to obtain and inspect the grand jury lists, which he did the same day. The

---

[2] Three different forms are used in the Northern District of Florida's jury selection process. The juror qualification form asks specific questions concerning citizenship, age, residence, knowledge of English, and disabilities. The jury information forms, which Ms Spencer released on December 2, 2005, appear at the bottom of the jury summons and contain the venireman's name, address, social security number, and other information. A third form is filled out by potential jurors for use by counsel in the jury selection process.

[3] Specifically, Dean questioned some jurors' nationality, ability to speak English, and length of residence in the Northern District of Florida. *Dean I*, 487 F.3d at 846.

court then denied the motion to stay, and trial began.[4]  The jury found Dean guilty on all counts on December 7, 2005.  The grand jury lists were returned to the clerk of court, but Dean kept the jury information forms Ms. Spencer had given to Sharon Bronco and B. C. Williams on December 2.

While he was imprisoned Dean made a series of recorded phone calls in 2006 in which he instructed his associates to share the petit jury forms with one another and use information on the forms to contact jurors.[5]  On October 23, 2006, another associate of Dean's, William Jones, sent letters to nine of the jurors who had convicted him in the 2005 trial and then sent another round of letters to jurors on November 16, 2005.[6]  Federal officers retrieved at least six of these letters and seized documents from Dean's prison cell on which he had written the names and phone numbers of Fred Suttles, Leslie Watson, and William Jones.  Based on the content of the phone calls and information in the seized papers, Dean was charged January 29, 2007, by information with one misdemeanor count of violation of the JSSA for disclosing the content of the jury information forms.

The magistrate judge conducted a two-day bench trial on March 7-8, 2007, and after all the evidence had been submitted, denied Dean's motion for judgment of acquittal.  The

---

[4] The district judge denied the motion on three grounds: (1) lack of merit; (2) untimeliness; (3), and the absence of a sworn statement of facts as required by the statute.  The Eleventh Circuit agreed with the trial judge that Dean's motion to stay was untimely and failed to include a sworn statement of facts as required by 28 U.S.C. § 1867(d).  *Dean I*, 487 F.3d at 849-50.  Dean's counsel conceded in appellate oral argument the Northern District of Florida's jury plan does not violate the JSSA.  *Id*. at 848.

[5] Eight of these calls were introduced into evidence before the magistrate judge.  Six were made to a number billed to Fred ("Sport") Suttles, Jr., and Dean spoke with Leslie Watson on two other calls.  Five of the calls are particularly relevant.  On January 17, 2006, Dean told Ms. Watson to "get all those [jurors'] names, give those names, give those juror questionnaires to, uh, Pat . . . and then he can go ahead and start setting up interviews . . . ."  Dean had two calls with Fred Suttles on March 4, when he told Suttles to get the jurors' names "and their phone numbers and Leo could start calling them today."  Later that day, Dean told Suttles, "Leslie [Watson] has the records, you know, the questionnaires.  So she's just got to put the name, you know, the address and the phone number of the person who was, you know, on the jury so that we can give that to Leo."  On March 22 and again on April 8, Dean stated that Leslie Watson had a set of the jury "questionnaires."  Appellee's brief at 7-9.  Dean does not dispute the accuracy of this evidence.

[6] The October 23 letters asked the jurors what law the juror "told" Dean he had broken; if the juror had read the charges against Dean; if the juror had been given instructions or "intell" on the charges by the government; and if the juror would have voted to convict if he or she "knew a government witness, a government employee, lied on the stand."  The November 16 mailings stated Jones would be sending the jurors additional information they were not allowed to see "by the evil empire" and that Dean had been railroaded.  *Dean II*, 506 F.Supp.2d at 1101.

magistrate judge found Dean guilty as charged on May 8, 2007, and issued a written order and memorandum on May 17, 2007.  On September 26, 2007, the magistrate judge sentenced Dean to a term of six months imprisonment, to run consecutively to a sentence of 84 months previously imposed by the district court July 7, 2006, for tax evasion. *See Dean I*, 487 F.3d at 849.  On October 4, 2007, Dean timely filed a notice of appeal in this court seeking review of the magistrate judge's decision, as authorized by 18 U.S.C. § 3402.

### **Standard of Review**

The denial of a motion for judgment of acquittal is reviewed *de novo*. *United States v. Hernandez*, 433 F.3d 1328, 1332 (11th Cir. 2005*)*.  The court reviews the evidence in the light most favorable to the government and draws all reasonable inferences in its favor. *Butcher v. United States*, 368 F.3d 1290, 1297 (11th Cir. 2004).  To uphold the denial of a motion for judgment of acquittal, the court must determine a reasonable fact finder could conclude the evidence establishes the defendant's guilt beyond a reasonable doubt. *United States v. Pistone*, 177 F.3d 957, 958 (11th Cir. 1999).

### **Discussion**

The JSSA ensures that every litigant entitled to a jury trial has the right to have grand and petit juries randomly selected from a fair cross-section of the district in which the presiding court convenes.  28 U.S.C. § 1861.  The statute provides the exclusive means by which a party can challenge a jury on the ground it was selected in violation of the JSSA.  28 U.S.C. § 1867(e).  To that end, litigants have a virtually unqualified right to inspect jury lists to determine if they have a valid challenge to the jury selection process, *Test v. United States*, 420 U.S. 28, 30, 95 S.Ct. 749, 750-51, 42 L.Ed.2d 786 (1975), but the JSSA strictly limits the disclosure of information in the jury records by time and use. Before a master jury wheel is emptied and refilled, and before everyone selected to serve on a jury prior to the wheel being emptied has done so – neither of which occurred in this case – jury record information can only be disclosed (1) pursuant to a district court plan,

or (2) to prepare a motion under § 1867(a).[7] Subchapter (a) allows a federal criminal defendant to file two motions under § 1867: (1) to stay the proceedings, and (2) to dismiss the indictment on the ground of a substantial violation of the JSSA's requirements. 28 U.S.C. § 1867(a). Defendants must promptly file their § 1867(a) motions because the statute permits challenges only before voir dire begins or within seven days of discovering a violation of the JSSA's procedures, whichever is earlier. *Id.* As the Eleventh Circuit emphasized in *Dean I*, these time limits are strictly enforced "so that the district court has an opportunity to evaluate the alleged noncompliance and to correct it before precious judicial resources are invested in a trial." *Dean I*, 487 F.3d at 849; *see also United States v. Contreras*, 108 F.3d 1255, 1266 (10th Cir. 1997).[8] The statute's limits on a defendant's ability to disclose jury record information are equally strict: Section 1867(f) prohibits a criminal defendant from disclosing the contents of jury records "except pursuant to the district court plan or as may be necessary in the preparation or presentation of a motion under subsection (a)." 28 U.S.C. § 1867(f).

Dean admits he aided and abetted the disclosure of information in the jury forms and the forms themselves post-trial.[9] Appellant's brief at 8-11. However, he argues the JSSA should be read to allow him to do so because he was pursuing "legitimate defense efforts," including post-trial attempts to discover new information showing a substantial statutory violation. *Id.* This argument requires the court to construe, as a matter of first impression, § 1867's limitations on revealing the contents of jury records obtained under the JSSA. The first rule of statutory interpretation is to decide if the statute's language has a clear and unambiguous meaning. *United States v. Fisher*, 289 F.3d 1329, 1337-38 (11th

---

[7] Section 1867 also grants the same jury challenge rights to the attorney general and to the parties in civil trials. 28 U.S.C. § 1867(b) & (c). Dean does not allege his actions in this case were sanctioned by any provision of the district court plan for the Northern District of Florida.

[8] In *Dean I*, for example, the Eleventh Circuit held Dean's motion to stay was untimely because it and his request for the jury information forms should have been made within seven days of his indictment on March 17, 2005. That was the earliest date on which he could have discovered whether he had grounds for a jury challenge. *Dean I*, 487 F.3d at 849.

[9] Dean's brief does not distinguish aiding and abetting from direct disclosure of information to his associates, appellant's brief at 20, but evidence at trial only supports aiding and abetting.

Case No. 3:07cr122/MCR

Cir. 2002). If it does, a court need not inquire further. *Id.* at 1338. No statutory provision should be read as meaningless, and a court may reach a result contrary to the statute's language only if the text's plain meaning yields absurd results. *Bouchard Transp. Co., Inc. v. Updegraff*, 147 F.3d 1344, 1351 (11th Cir. 1998); *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1167 (11th Cir. 2003).

The court finds § 1867 unambiguous in its limitations on the use of jury records. The court therefore need look no further than the statute's plain language to determine that Dean's attempt to broaden § 1867's scope to allow post-trial disclosure is without merit.[10] While § 1867(f) does not specify the ways in which a defendant can use information from juror forms in preparing a motion to stay or a motion to dismiss the indictment under § 1867(a), the statute explicitly limits a defendant's use of jury records both by purpose – the motions allowed under § 1867(a) or "pursuant to the district court plan" – and by time – before voir dire or within seven days the defendant could have discovered a violation of the JSSA, whichever occurs first. These provisions restrict rather than expand a defendant's right to challenge juries under the statute. *See United States v. Bearden*, 659 F.2d 590, 595 (5th Cir. 1981). The Eleventh Circuit underscored this point in *Dean I* by stressing that the statute's procedural requirements are strictly enforced to ensure jury challenges are filed before trial begins. *Dean I*, 487 F.3d at 849. Dean's argument directly contradicts the Eleventh Circuit's teaching. If Dean had the right to use information on the jury forms post-trial, § 1867(e), which states "[t]he procedures prescribed by this section shall be the exclusive means by which" a federal defendant can challenge a jury based on a violation of the JSSA, would be rendered meaningless by allowing defendants to pose

---

[10] Although the court therefore need not look to the statute's legislative history, it nonetheless notes that Congress clearly indicated in the JSSA's legislative history the statute's purpose was to reduce spurious jury challenges by forcing litigants to bring such challenges quickly. The House Report on § 1867 states: "[O]ther features of the bill will combine to reduce the dilatory potential of challenges by allowing for rapid disposition of such spurious claims as are raised." J.R. Rep. No. 90-1076, at 14 (1968), *reprinted in* 1968 U.S.C.C.A.N. 1792, 1805.

Case No. 3:07cr122/MCR

challenges in ways the JSSA does not contemplate.[11] The court therefore finds the statute prohibits the use of the contents of jury records for any purpose after the time for filing a motion under § 1867(a) expires or "pursuant to the district court plan." 28 U.S.C. § 1867(f).

Dean also argues the magistrate judge erred because Dean lacked the requisite *mens rea* to violate the JSSA. According to Dean the enforcement provision of § 1867(f) requires the specific intent to violate the statute because § 1867 does not contain a *scienter* element. Any other interpretation, he argues, would render § 1867(f) a strict liability crime.[12] Appellant's brief at 23. The court disagrees. Strict liability ordinarily exists only when Congress gives some express or implied indication it intended to eliminate *mens rea* from a statute that is otherwise silent on intent, *Staples v. United States*, 511 U.S. 600, 606, 114 S.Ct. 1793, 1797, 128 L.Ed.2d 608 (1994), and a court begins by looking to the statute's legislative history. *United States v. Knight*, 490 F.3d 1268, 1271 (11th Cir. 2007); *United States v. Henry*, 111 F.3d 111, 113, (11th Cir. 1997). In this case the JSSA's scant history does not suggest what *mens rea* requirement Congress intended, but it gives no indication Congress meant to exclude intent altogether. *See* J.R. Rep. No. 90-1076 at 15 (1968), *reprinted in* 1968 U.S.C.C.A.N. 1792, 1806. Two principles guide the court's analysis. First, a court should read into a statue only the *mens rea* element necessary to separate legal from illegal activity. *Carter v. United States*, 530 U.S. 255, 269, 120 S.Ct.

---

[11] Dean argues that if Ms. Spencer had provided his associates with the juror qualification forms on December 2 instead of the jury information forms "we would not be here today." Appellant's brief at 22. This argument is moot because even if Dean had received the qualification forms his request would have been untimely under the statute. *Dean I*, 487 F.3d at 849. Therefore, no matter what forms Ms. Spencer gave Dean's associates on December 2, he could not have used them to challenge the jury under § 1867(a) before or after trial.

[12] Dean specifically claims the JSSA requires a showing of knowledge and willfulness, but these terms do not necessarily give rise to a specific intent crime. "Knowingly" in a criminal statute "typically signals that the statute only requires a finding of general intent for conviction." *U.S. v. George*, 386 F.3d 383, 390 n.6 (2d Cir. 2004). The Supreme Court has remarked that "willfully" is a "word of many meanings whose construction is often dependent on the context in which it appears." *Bryan v. United States*, 524 U.S. 184, 191, 118 S.Ct. 1939, 1945-46, 141 L.Ed.2d 197 (1998). Dean's reliance on *Bryan*, *Ratzlaf v. United States*, 510 U.S. 135, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994), and *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007) is misplaced. Each of those cases interpreted a *mens rea* requirement of "willful" within the context of the statute in which it appeared. The JSSA, by contrast, is silent on *scienter*, and the Eleventh Circuit has made clear "[t]he silence of [a] statute is dispositive" the crime is one of general intent. *United States v. Campa*, 529 F.3d 980, 999 (11th Cir. 2008).

2159, 2169, 147 L.Ed.2 203 (2000).  Second, a criminal statute's silence on *mens rea* ordinarily creates a general intent crime.  *Campa*, 529 F.3d at 999 ("Where no specific intent element is apparent on the face of the statute, the crime is one of general intent.") (internal quotation and citation omitted).  General intent requires a criminal defendant to knowingly engage in the conduct a statute prohibits.  *United States v. Phillips*, 19 F.3d 1565, 1576-77 (11th Cir. 1994) ("[A] defendant need not intend to violate the law to commit a general intent crime, but he must actually intend to do the act that the law proscribes."). Contrary to Dean's claim, general intent is sufficient to separate lawful from unlawful activity under § 1867.  If § 1867(f) prohibited disclosing jury record information only when one had the specific intent to violate the statute, it would allow litigants to disseminate jury information during and after trial as long as they did so with a good faith belief that substantial violations of the JSSA had occurred.  As noted before, however, the strict limitations on the use of jury information under § 1867(f) and the stringent time requirements for filing motions under § 1867(a) – the only uses a criminal defendant has for jury records under § 1867 – clearly prohibit such behavior.  Knowingly engaging in acts contrary to § 1867's restrictions, not specific intent, violates § 1867(f).

As a result, Dean's argument that his conduct was "the innocent pursuit of a legitimate legal claim" fails.  Appellant's brief at 27.  Dean acknowledges he knew the jury record information was confidential and told Fred Suttles "the only thing is I can't, you know, go out and disseminate it, and publish it, and put it on my website and stuff like that." Appellant's brief at 8.  Although Dean misunderstood the scope of § 1867's restrictions on disclosing jury record information, with few exceptions not applicable here, ignorance of the law is not a defense to criminal conduct.[13]  *United States v. Anderson*, 872 F.2d 1508, 1515 (11th Cir. 1989).  The evidence shows Leslie Watson had copies of the jury forms;

---

[13] In her concurrence in *Staples* Justice Ginsburg stressed that general intent is presumed in criminal statutes otherwise silent on *scienter* because of the long-held presumption that ignorance of the law is no excuse.  See *Staples*, 511 U.S. at 622  (Ginsburg, J., concurring) ("The *mens rea* presumption requires knowledge only of the facts that make the defendant's conduct illegal, lest it conflict with the related presumption, deeply rooted in the American legal system, that, ordinarily, ignorance of the law or a mistake of law is no defense to criminal prosecution.") (citation omitted).

Dean knowingly instructed her to give copies to "Pat"; and he told Suttles to instruct Watson to give jurors' names and numbers to "Leo." *Dean II*, 506 F.Supp.2d at 1101; *see also* note 5 *supra*. The evidence is therefore sufficient to show Dean knowingly aided and abetted actions prohibited by § 1867, which satisfied the *mens rea* requirement of § 1867(f).

Finally, Dean argues his actions were protected by the Fifth and Sixth Amendments of the Constitution because (1) they were part of a legitimate defense effort and (2) his conviction deprived him of the right to defend himself. Appellant's brief at 28. Neither of these constitutional claims was raised before the magistrate judge. They are therefore waived and reviewed on appeal for plain error. *United States v. Lewis*, 492 F.3d 1219, 1221 (11th Cir. 2007). Under the plain error standard, Dean must show: (1) an error (2) that is plain and (3) affects his substantial rights. *United States v. Monroe*, 353 F.3d 1346, 1349 (11th Cir 2003). Only if Dean carries his burden of proof may this court exercise its discretion to remedy an error that seriously affects "the fairness, integrity, or public reputation of judicial proceedings." *Id*. (citation omitted). Dean's argument is conclusory and without merit. As discussed above, Dean had no right under § 1867 to aid and abet the disclosure of jury record information after his trial ended. Nor was he deprived of the right to defend himself in his motion for judgment of acquittal; Dean was represented by counsel and waived the right to testify on his behalf at closing arguments on the motion. Transcript at 95-110, 142.

For all of the foregoing reasons, the magistrate judge's decision is AFFIRMED. **DONE and ORDERED** this 5th day of June, 2009.

*s/ M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**